# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PATRICK ALAN GEDDES,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-777
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

    Plaintiff Patrick Alan Geddes brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying his applications for disability insurance benefits (DIB) and

supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 13), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply

(Doc. 20).

## I. Procedural Background

    Plaintiff protectively filed applications for DIB and SSI in May 2014 alleging disability

since January 1, 1997,[1] due to Scheuermann's disease,[2] kidney problems, gout, neuropathy,

spinal myofascial syndrome, and blood pooling in his veins. (Tr. 216). The applications were

denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted

a *de novo* hearing before administrative law judge ("ALJ") Andrew Gollin. Plaintiff and a

vocational expert ("VE") appeared and testified at the ALJ hearing on July 14, 2016. On August

---

[1] Plaintiff amended his alleged onset date of disability to July 1, 2014. (Tr. 66-68, 210).
[2] Scheuermann's, disease (juvenile kyphosis) is a deformity in the thoracic or thoracolumbar spine in which
pediatric patients have an increased kyphosis along with backache and localized changes in the vertebral bodies.
*See* https://emedicine.medscape.com/article/311959-overview (last visited on Jan. 14, 2019).

3, 2016, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act
> through December 31, 2018.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since July 1, 2014,
> the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: obesity; idiopathic
> polyneuropathy; gout; Scheuermann's disease; osteoarthritis; venous
> insufficiency; kidney disease; and status post hand surgery (20 CFR 404.1520(c)
> and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals the severity of one of the listed impairments in 20 CFR
> Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
> 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, [the ALJ] finds that the
> [plaintiff] has the residual functional capacity [("RFC")] to perform sedentary
> work as defined in 20 CFR 404.1567(a) and 416.967(a) except the [plaintiff] is
> limited to no more than occasional pushing/pulling using foot controls with either
> lower extremity, and must be able to make position changes between sitting,
> standing, and walking while at the workstation for up to three minutes per hour,
> and the [plaintiff] must be able to perform the job while sitting on a stool. The

[plaintiff] is limited to no more than occasional climbing of ramps and stairs, balancing, stooping, and crouching. The [plaintiff] is limited to no climbing of ladders, ropes, or scaffolds, kneeling, and/or crawling. The [plaintiff] is limited to no more than occasional overhead reaching with either upper extremity. The [plaintiff] is limited to no more than frequent handling, fingering, and feeling with either hand. The [plaintiff] is limited to [no] concentrated exposure to extreme cold, extreme heat, humidity, pulmonary irritants, and/or vibration. The [plaintiff] is limited to no work involving hazardous machinery/equipment and no work involving unprotected heights. The [plaintiff] is limited to jobs that allow for employees to miss up to one day of work per month.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1980 and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and can communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the [plaintiff]'s past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering [the plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [the plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[4]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from July 1, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-17).

---

[3]Plaintiff has past relevant work as a cashier, a light unskilled position. (Tr. 15-16, 66).
[4]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary occupations such as sorter, with 80,000 jobs nationally; inspector, with 75,000 jobs nationally; and document preparer, with 50,000 jobs nationally. (Tr. 16-17, 70).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

## D. Medical Evidence

Plaintiff received primary care from Jo Ann Sparnall, M.D. When seen in July 2013, he exhibited +2 pitting in his bilateral lower extremities up to his knees with chronic venous stasis changes. Plaintiff was given a trial of compression stockings. (Tr. 329). In February 2014, plaintiff complained to Dr. Sparnall of intermittent right wrist pain. On examination he exhibited full range of motion. He was assessed with joint pain and prescribed the pain reliever diclofenac. (Tr. 327).

On March 17, 2014, plaintiff was seen by a rheumatologist, Robert Hiltz, M.D., at Group Health Associates due to complaints of joint pain and swelling. (Tr. 291). Plaintiff was found to be 78" and 397 pounds with a calculated body mass index ("BMI") of 45.96. (Tr. 293). On examination, his temporal arteries were palpable and nontender. He had normal muscle tone, coordination, and range of motion in his neck and shoulders but decreased range of motion and tenderness in his hips, knees, and back. (Tr. 293-94). Dr. Hiltz reviewed prior films that showed extensive spinal hardware and that plaintiff's S1 joints were abnormal in appearance with chronic sacroiliitis or partial fusion. (Tr. 294). Dr. Hiltz assessed history of Scheuermann's disease, degenerative joint disease and effusions, and obesity and ordered x-rays and blood work. (*Id.*)

Lumbar spine x-rays taken on March 17, 2014 showed vertebral height and alignment within normal limits; thoracolumbar fusion; degenerative changes; and narrowing of sacroiliac joints bilaterally with probable fusion on the right. (Tr. 307).

When seen on April 7, 2014 by Bob Whitten, M.D., one of the physicians at Group Health Associates, plaintiff's height was 6'6" and he weighed 388 pounds, with a BMI greater

6

than 44. He was found to be well-developed, alert, and cooperative. His mood and affect were appropriate. He was alert and oriented. Skin showed chronic venous changes in the distal lower extremities along the medial and posterior aspect of the tibial areas. No significant cervical lymphadenopathy was appreciated. Dr. Whitten noted plaintiff's surgical scar along the axial spine from the upper thoracic to the mid lumbar spine that was well healed and nontender. He had dependent cyanosis bilaterally with some mild dependent edema. He moved in a mildly guarded fashion in transition from sitting to standing to the table. His gait was not antalgic but was slow and slightly wide-based with feet externally rotated. No weakness was noted on heel or toe walk. Plaintiff's lumbar range of motion showed virtually no movement in the mid and lower thoracic, as well as the mid and upper lumbar (consistent with his surgery) with compensatory movement above and below the surgical site. There was mild increased tone with some tenderness noted diffusely along the axial skeleton from the occiput to the lumbosacral paraspinals extending poorly outward over the shoulders or hips. Plaintiff's shoulder and hip range of motion were intact. Careful neurologic examination suggested a stocking distribution loss distally - most pronounced to vibratory sense. His reflexes were hypoactive but symmetrical at the knees and ankles. Plaintiff's sensation remained intact to light touch and pinprick, even distally. His manual muscle testing showed no focal asymmetric weakness proximally or distally in the lower limbs. Dr. Whitten assessed Scheuermann's disease with Harrington rods placed upper thoracic to mid lumbar paraspinals; spinal myofascial syndrome; and idiopathic polyneuropathy (likely with a vascular origin). Dr. Whitten recommended plaintiff attend physical therapy just once, primarily to develop a home exercise program, and he prescribed Gabapentin. (Tr. 282).

On April 14, 2014, plaintiff underwent a physical therapy evaluation for his low back pain. He noted back pain for many years with rod placement in 1996 for Scheuermann's kyphosis. He reported pain ever since then that had become slightly worse recently. (Tr. 275). Plaintiff was given exercises for a home exercise program. (Tr. 277).

On April 25, 2014, plaintiff saw Dr. Hiltz for a follow-up on his spinal arthritis/atypical spondylosis. (Tr. 268-73). On examination, his temporal arteries were palpable and nontender, he had normal muscle tone and coordination, and he had normal range of motion in his neck and shoulders, but he had decreased range of motion and tenderness in his hips, knees, and back. Plaintiff was taking the medication Gabapentin. (Tr. 271-72).

On September 11, 2014, plaintiff complained to Dr. Sparnall of chronic back and joint pain, and he reported feeling tired all the time. On examination, he appeared slightly disheveled; his heart and lungs were normal; and his abdomen was obese. He had no joint swelling or deformity in his hands bilaterally. Dr. Sparnall ordered lab work. (Tr. 338).

In November 2014 and July 2015, plaintiff again displayed normal muscle tone, coordination, and range of motion in his neck and shoulders but decreased range of motion and tenderness in his hips, knees, and back. The Gabapentin was discontinued. (Tr. 360, 366-67). Dr. Hiltz discussed with plaintiff his noncompliance with diet recommendations. (Tr. 358).

On August 28, 2015, plaintiff saw hand surgeon Paul Fassier, M.D., for gradually worsening stiffness of the right finger and limited motion. (Tr. 437). On examination, Dr. Fassier found swelling of the right long finger and mild tenderness to palpation along the flexor surface. (Tr. 439). Plaintiff exhibited significant stiffness of the right long finger and of the PIP (proximal interphalangeal) joints. He also exhibited no active flexion of the DIP (distal

8

interphalangeal) joint. Dr. Fassier noted that lack of DIP joint motion could be the result of significant tendon adhesions due to flexor synovitis, possible gouty tenosynovitis, or a ruptured flexor tendon. He recommended an MRI of the right hand/long finger. (Tr. 440). The MRI indicated a mass-like infiltration along the flexor tendons consistent with tophaceous gout. (Tr. 433).

On February 2, 2016, plaintiff visited Dr. Fassier for a follow-up. Dr. Fassier noted that plaintiff's right middle finger was severely restricted, and he recommended surgery. (Tr. 431-34). Plaintiff underwent a synovectomy and joint release on February 29, 2016. (Tr. 452-53). Following this surgery, plaintiff underwent physical therapy and by May 3, 2016, the surgeon discontinued the outpatient therapy, noting that plaintiff had "fairly good range of motion" and should continue his home range of motion exercises. (Tr. 446).

On musculoskeletal examination on March 9, 2016, plaintiff exhibited normal range of motion, no edema, and no tenderness. He was negative for back pain. (Tr. 475). On April 4, 2016, plaintiff's physical examination revealed normal muscle tone, coordination, and range of motion in his neck and shoulders, but decreased range of motion and tenderness in his hips, knees, and back. (Tr. 457-58). On June 14, 2016, plaintiff was negative for myalgias, back pain, and arthralgias. (Tr. 466).

Due to abnormal liver function tests, plaintiff underwent a right upper quadrant ultrasound on February 5, 2016, which showed cholelithiasis and increased hepatic echotexture consistent with fatty infiltration but no sonographic evidence of acute cholecystitis. (Tr. 527-28). A hepatic function panel drawn on July 6, 2016 was normal. (Tr. 537).

The record does not contain any opinions from treating or examining physicians. The ALJ assigned partial weight to the opinions of state agency physicians, Diane Manos, M.D., who reviewed the record in July 2014, and Leanne Bertani, M.D., who reviewed the record in September 2014. (Tr. 15). They concluded that plaintiff is limited to a range of sedentary to light exertional abilities. (Tr. 79-81, 99-101). The ALJ concluded that additional medical evidence received in the course of developing plaintiff's case justifies a conclusion that his impairments are more limiting than was concluded by the state agency physicians. (Tr. 15).

**E. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred in assessing his credibility by finding that plaintiff failed to follow his physician's advice and by not articulating what weight the ALJ accorded plaintiff's testimony (first and second assignments of error); (2) the ALJ failed to comply with SSR 02-01p in not considering the impact of plaintiff's obesity on his ability to work (third assignment of error); and (3) the ALJ failed to properly evaluate plaintiff's RFC (fourth assignment of error). (Docs. 13 and 20).

**1. Plaintiff has failed to establish any error with the ALJ's consideration of his failure to follow his physician's advice or the ALJ's credibility finding.**

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). *See also Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the

credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Id.*

In addition, 20 C.F.R. §§ 404.1529, 416.929 and SSR 96-7p, 1996 WL 374186 (July 2, 1996)[5] describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c), SSR 96-7p.

Upon review of the ALJ's complete credibility determination, the Court finds the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference. Plaintiff contends the ALJ erred when he relied on plaintiff's poor diet and failure to

---

[5] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." *See* 2016 WL 1237954 (clarifying effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *Accord Cameron v. Colvin,* No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

exercise, contrary to his physicians' instructions, to deny disability benefits. (Doc. 13 at 8, citing Tr. 15). Plaintiff alleges there is no evidence that the recommendations to lose weight and exercise would restore his ability to work and, therefore, the ALJ failed to comply with 20 C.F.R. §§ 404.1530 and 416.930, which provide that to obtain disability benefits, a claimant must follow prescribed treatment if it will restore his ability to work. (Doc. 13 at 7-8).

In this case, the ALJ noted that the record was "replete with recommendations to lose weight, exercise, and follow a better diet,"[6] and plaintiff's doctors "have consistently noted that he continues to follow a poor diet and has not been watching his diet or exercising." (Tr. 15, citing Exhibit B7F [Tr. 455-463—has not lost any weight; diet still poor with regards to the gout/back on soft drinks; patient instructions: "no more soft drinks!!"; "work on weight reduction"]; Exhibit B8F [see, e.g., Tr. 467—encouraged weight loss, exercise and diet; declined referral for weight management; Tr. 471—refuses referral for weight management). Contrary to plaintiff's argument, the ALJ considered plaintiff's noncompliance with the diet and exercise recommendations of his physicians only insofar as it bore on plaintiff's credibility, not as a basis for denying disability benefits under the Social Security Regulations. The ALJ never cited 20 C.F.R. §§ 404.1530 and 416.930 in his decision or suggested plaintiff's noncompliance with the recommendations of his physicians was a basis for denying benefits. Rather, this was one factor of many considered by the ALJ in assessing the credibility of plaintiff's allegations of debilitating pain and limitations. The ALJ committed no error in this regard.

Next, plaintiff alleges the ALJ erred when he failed to articulate the weight accorded to plaintiff's testimony in assessing the credibility of his subjective complaints under Social

Security Ruling 97-6p. (Doc. 13 at 9). It appears that the provision of the ruling upon which

plaintiff relies states, in relevant part:

> It is not sufficient for the adjudicator to make a single, conclusory statement that
> "the individual's allegations have been considered" or that "the allegations are
> (or are not) credible." It is also not enough for the adjudicator simply to recite
> the factors that are described in the regulations for evaluating symptoms. The
> determination or decision must contain specific reasons for the finding on
> credibility, supported by the evidence in the case record, and must be sufficiently
> specific to make clear to the individual and to any subsequent reviewers the
> weight the adjudicator gave to the individual's statements and the reasons for
> that weight.

SSR 97-6p.

Plaintiff is correct that the ALJ did not characterize his credibility finding in terms of the

"weight" he afforded plaintiff's testimony. Nevertheless, the ALJ specifically set forth his

reasons for determining that plaintiff's subjective allegations about the intensity, persistence, and

functional limitations of his symptoms were not entirely consistent with the medical and other

evidence of record (Tr. 14), and those reasons find substantial support in the record. The ALJ

noted that while plaintiff alleges debilitating pain, the medical evidence shows he is able to

ambulate effectively without the use of assistive devices. (Tr. 14, 266, 282, 341, 483). The ALJ

also noted that plaintiff did not demonstrate most of the signs typically associated with chronic,

severe pain, such as muscle atrophy, spasm, rigidity, or tremor, and there was a lack of positive

imaging findings showing pathology that correlated with his complaints of pain. (Tr. 14). The

ALJ reasonably determined that plaintiff exhibited neurological and musculoskeletal findings

that were inconsistent with his allegations of debilitating pain. These included normal muscle

tone, a wide-based at times, non-antalgic gait, and normal coordination. (Tr. 14, 266, 271, 282,

---

[6] *See* Tr. 15, 267, 281-82, 293-94, 355, 358, 361-62, 370, 455, 457-59, 466-67, 470-471, 497, 502-503.

354, 361, 366, 370, 458). *See also* Tr. 475 (March 2016: musculoskeletal exam showed normal

range of motion, no edema, no tenderness, and negative for back pain); Tr. 483 (February 2016

musculoskeletal exam showed no edema and no tenderness). The ALJ reasonably relied on the

lack of objective findings to find that plaintiff's complaints of severe chronic back pain were not

fully credible. *See Jones v. Sec'y., HHS*, 945 F.2d 1365, 1369-70 (6th Cir. 1991) (reliable

objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion,

muscle spasm and sensory and motor disruption).

   In addition to the lack of objective evidence, the ALJ reasonably discounted plaintiff's

allegations of disabling pain because the record shows plaintiff had not required repeated in-

patient treatment or frequent emergency room treatment for episodes of acute pain, and his

treatment has been conservative and routine, with the exception of his hand surgery. (Tr. 14).

Plaintiff objects to the consideration of these factors in assessing his credibility (Doc. 13 at 10),

but the treatment a claimant receives is a legitimate consideration.[7] *See Helm v. Comm'r of Soc.

Sec.*, 405 F. App'x 997, 1001-02 (6th Cir. 2011) (ALJ properly noted that plaintiff's "modest

treatment regimen – consisting solely of pain medication – was inconsistent with a finding of

total disability") (citing *Myatt v. Comm'r of Soc. Sec.,* 251 F. App'x 332, 334-35 (6th Cir.

2007)); *McKenzie v. Comm'r of Soc. Sec,* 215 F.3d 1327, 2000 WL 687680, at \*4 (6th Cir. May

19, 2000) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined by his

non aggressive treatment."); 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (ALJ can

consider medication and other treatment when assessing credibility).

---

[7] Plaintiff alleges the ALJ is "confused" regarding the treatment he received because plaintiff underwent surgery for the placement of rods in his back for Scheuermann's disease. (Doc. 13 at 10). However, this surgery occurred in 1996, almost 10 years prior to plaintiff's alleged onset date, and plaintiff performed substantial gainful

14

Finally, plaintiff contends the ALJ erred in assessing his credibility because there is objective evidence to support his limitations. To the extent plaintiff cites to his own subjective complaints that are reflected in the medical records (Doc. 13 at 10, citing Exhibit 1F, Tr. 283), this does not constitute objective or clinical evidence in support of his disability claim. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). While the record reflects some clinical and objective findings that arguably support plaintiff's subjective complaints (Tr. 271, 294, 354, 360, 366, 457-58: decreased range of motion in the lower extremities with some tenderness and swelling in the knees; Tr. 307-308: narrowing of sacroiliac joints and degenerative changes), even where substantial evidence would support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999). Though there is some medical evidence supporting plaintiff's testimony, the ALJ's credibility determination is substantially supported by the reasons identified by the ALJ and should not be disturbed by this Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

The ALJ cited ample reasons for discounting plaintiff's credibility. Because the ALJ's credibility determination is supported by substantial evidence, this Court must defer to it. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Plaintiff's first and second assignments of error should be overruled.

---

activity through 2013 after this remote surgery. (Tr. 27, 281).

## 2. The impact of plaintiff's obesity.

Plaintiff argues the ALJ erred by failing to consider the impact of his obesity on his ability to work in accordance with SSR 02-01p. (Doc. 13 at 12-14). He alleges the "ALJ fails to consider the combined effects of obesity with other impairments may be greater than might be expected without obesity. The ALJ's statement that this has been considered does not comply with SSR 02-01p." (*Id.* at 14).

SSR 02-01p addresses the evaluation of obesity in the disability process. Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002). SSR 02-01p recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching. SSR 02-01p, 2000 WL 628049, at *6. The Ruling insures that the Commissioner will consider a claimant's obesity in performing steps two through five of the sequential analysis. SSR 02-1p, 2000 WL 628049, at *3. SSR 02-01p does not mandate a particular mode of analysis for an obese claimant. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 412 (quoting SSR 02-01p). *See also Young v. Comm'r of Soc. Sec.*, No. 3:09 CV 1894, 2011 WL 2182869, at *7 (N.D. Ohio June 6, 2011) ("The Sixth Circuit requires the ALJ to mention obesity either expressly or indirectly where the record includes evidence of obesity's effects on the claimant's impairments.").

In light of the regulations requiring that a claimant "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about your medical

impairment(s) and . . . its effect on your ability to work on a sustained basis," 20 C.F.R. §§ 404.1512, 416.912, a claimant relying on obesity to establish disability should provide evidence that obesity affects his ability to work. *Snyder v. Comm'r of Soc. Sec.*, No. 2:10-cv-00821, 2012 WL 27302, at *8 (S.D. Ohio Jan. 5, 2012) (Report and Recommendation), *adopted*, 2012 WL 871202 (S.D. Ohio Mar. 13, 2012) (citing *Cranfield v. Comm'r, Soc. Sec.*, 79 F. App'x 852, 857- 58 (6th Cir. 2003) (finding that even though physician's reports indicated obesity, the ALJ was not obligated to address the claimant's obesity in light of the claimant's failure to provide evidence that her obesity was a significant impairment that affected her ability to work); *May v. Astrue*, No. 4:10-cv-1533, 2011 WL 3490186, at *6 (N.D. Ohio June 1, 2011) (holding that the ALJ had no obligation to address a claimant's obesity when, despite a diagnosis of obesity in the record, the claimant did not carry burden of demonstrating there were any "functional limitations ascribed to the condition[ ]")).

Here, the ALJ found that obesity was a severe impairment. (Tr. 11). The ALJ specifically noted that he "considered the impact obesity has on [plaintiff's] limitation of function, including the [plaintiff's] ability to perform routine movement and necessary physical activity within the work environment." (Tr. 12). Plaintiff argues that the medical record supports his testimony "that he suffers from a (sic) chronic back pain, bilateral hand and elbow pain, bilateral knee pain, ankle pain etc." (Doc. 13 at 14). However, as discussed above, the ALJ's determination that the medical evidence does not fully support plaintiff's subjective complaints is supported by substantial evidence. Plaintiff also alleges that "just sitting results in pain and numbness radiating down his lower extremities" (Doc. 13 at 14), but he fails to cite to any medical evidence of radicular symptoms documented by his physicians or that such

17

symptoms are exacerbated by his obesity. Plaintiff also contends that it is evident the ALJ did

not comply with SSR 02-01p because he determined plaintiff was capable of occasional stooping

and climbing ramps and stairs. (*Id.*). Aside from citing to evidence of plaintiff's weight and

BMI in support of his fourth assignment of error (Doc. 13 at 16), plaintiff has not supported this

argument with a citation to any medical evidence establishing he was not capable of these

functional activities. Plaintiff has not cited any medical evidence or opinion indicating there are

additional restrictions the ALJ should have included in the RFC to accommodate the impact of

his obesity on his other impairments. Nor has plaintiff identified any specific functional

limitations imposed by his obesity. The ALJ was not required to assume in the absence of such

evidence that obesity exacerbated plaintiff's impairments and impacted his ability to perform

basic work activities. *See* SSR 02-01p, 2000 WL 628049, at *6 (the ALJ "will not make

assumptions about the severity or functional effects of obesity combined with other

impairments."). For these reasons, the Court finds that the ALJ adequately considered plaintiff's

obesity. Plaintiff's third assignment of error should be overruled.

### 3. The ALJ properly determined plaintiff's RFC

Plaintiff argues that "the ALJ failed to account for the complete medical record of

evidence" when fashioning plaintiff's RFC. (Doc. 13 at 14-17). Plaintiff cites to evidence from

October 2015 reflecting decreased range of motion in plaintiff's lower extremities and hands,

swelling in his knees, and effusion in the left knee. (Doc. 13 at 15, citing Tr. 354).[8] Plaintiff

also cites to a visit in January 2016 reflecting his report of back pain, joint swelling and

---

[8] Plaintiff also cites this record for the proposition that "he experiences pain in the lumber back." (Doc. 13 at 15, citing Tr. 354). However, it was reported that plaintiff was "negative for back pain and neck pain" on that visit. (Tr. 353).

arthralgias. (Tr. 487). In addition, plaintiff cites to evidence from February 2, 2016 showing he had limited motion of his left index finger which "significantly interferes with the use of the hand" (Doc. 13 at 15, citing Tr. 431) and severely restricted motion of the right long finger. (*Id.*, Tr. 433). Finally, plaintiff alleges the ALJ failed to take into account his ongoing struggles with obesity and improperly assessed plaintiff's credibility in assessing his RFC. (Tr. 13 at 16).

The ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. §§ 404.1546(c), 416.946(c) (the responsibility for assessing a claimant's RFC lies with the ALJ). It is the ALJ's duty to fashion an RFC based on all of the evidence of record.

In this case, the ALJ gave plaintiff an RFC for a restricted range of sedentary work with postural and non-exertional limitations. There was no opinion evidence from plaintiff's treating physicians, and the state agency physicians opined that plaintiff is limited to a range of sedentary to light exertional abilities. (Tr. 79-81, 99-101). Based on additional medical evidence received after those physicians rendered their opinions, the ALJ concluded that plaintiff's impairments are more limiting than was concluded by the state agency physicians. (Tr. 15). The evidence cited by plaintiff does not support a finding that the ALJ's RFC formulation is not supported by substantial evidence.

First, plaintiff's arguments regarding his obesity and credibility have already been discussed above and do not support a reversal of the ALJ's decision. Second, the clinical evidence showing decreased range of motion in the lower extremities and hands, and some swelling in plaintiff's knees, without more, does not justify further limitations than those

imposed by the ALJ. During the same office visit cited by plaintiff, he exhibited normal muscle tone and coordination, and normal range of motion in his neck and shoulders. (Tr. 353-54). Plaintiff likewise demonstrated similar findings on other visits (Tr. 266, 271, 282, 354, 361, 366, 370, 458), as well as normal findings upon exam on subsequent visits, including findings of normal strength, coordination, gait, and musculoskeletal range of motion and no edema or tenderness upon exam. (Tr. 475, 483). In addition, plaintiff exhibited no weakness upon manual muscle testing of the lower extremities. (Tr. 266, 282, 370). The ALJ reasonably accommodated the limited range of motion in plaintiff's lower extremities by limiting plaintiff to sedentary work with a sit/stand option, including the ability to walk for three minutes per hour and to sit on a stool while performing work activities. Plaintiff has cited to no evidence, aside from his own subjective allegations, to undermine the ALJ's RFC decision in this respect.

Finally, plaintiff cites evidence suggesting the ALJ should have imposed additional limitations on the use of his hands. However, the medical record showing plaintiff had limited motion of his left index finger which "significantly interferes with the use of the hand" (Tr. 431) is actually plaintiff's subjective report to his physician, and not a clinical finding by the doctor. The notes from the February 2, 2016 exam cited by plaintiff do not show that any findings were made by the physician with respect to plaintiff's non-dominant left index finger. (Tr. 433). While plaintiff clinically exhibited severely restricted motion of the right long finger (Tr. 433), plaintiff underwent surgery on his right finger later that month (a synovectomy and joint release) to help alleviate the stiffness of the right middle finger. (Tr. 452-53). Following physical and occupational therapy, plaintiff had "fairly good range of motion" in the affected joint of his right finger compared to his range of motion preoperatively. (Tr. 15, 446). Plaintiff has presented no

20

evidence that he had disabling limitations of his right middle finger for a continuous period of 12 months, *see* 20 C.F.R. §§ 404.1505, 416.905, or demonstrated why he could not perform the "frequent" fingering, handling, and feeling set forth in the RFC. Although plaintiff disagrees with the ALJ's RFC assessment, plaintiff points to no additional evidence showing functional limitations imposed by his impairments that the ALJ failed to take into account when formulating the RFC. Plaintiff's last assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: _1/28/19_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PATRICK ALAN GEDDES,
    Plaintiff,

Case No. 1:17-cv-777
Dlott, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).